**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** : | |
| : | **Case No.: 19-21899-CMB** |
| **August C. Signorini, Jr.** : | **Chapter 13** |
| **Beth A. Signorini** : | |
| : | |
| **Debtor(s)** : | |
| : | |
| **USB Leasing LT** : | **Date and Time of Hearing** |
| Movant, : | **Place of Hearing** |
| **vs** : | **January 19, 2023 at 01:30 p.m.** |
| : | |
| **August C. Signorini, Jr.** : | **Related Doc# 128** |
| **Beth A. Signorini** : | |
| : | |
| **Ronda J. Winnecour** : | |
| **Respondents.** | |

**COVERSHEET FOR SUPPLEMENT/ADDENDUM TO MOTION OF USB LEASING
LT FOR RELIEF FROM AUTOMATIC STAY**

/s/Stephen R. Franks
Stephen R. Franks, Esquire (0075345)
Adam B. Hall (323867)
Edward H. Cahill (0088985)
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH  43216-5028
Telephone: 614-220-5611
Fax: 614-627-8181
Attorneys for Creditor
The case attorney for this file is Stephen R. Franks.
Contact email is srfranks@manleydeas.com

# MOTOR VEHICLE LEASE AGREEMENT-CLOSED-END

**EXHIBIT A**

**U.S. Bank**

## 1. LESSEE AND LESSOR

**LESSEE AND CO-LESSEE:** AUGUST C SIGNORINI JR
**Name:** BETH ANN SIGNORINI
**Address:** 360 980 ROAD, MCDONALD PA 15057
**County:** ALLEGHENY

**LESSOR**
**Name:** SOUTH HILLS CHRYSLER DODGE JEEP RAM
**Address:** 3344 WASHINGTON RD, MCMURRAY PA 15317

**Vehicle Garaging Address (if different from Lessee/Co-Lessee address):** N/A

**LEASE NUMBER:**     **LEASE DATE:** 11/20/2018

The words "you" and "your" mean each person named as a Lessee or Co-Lessee above. The words "we," "us" and "our" mean the Lessor named above and USB Leasing LT or its successors and assigns ("Assignee"), to whom this Motor Vehicle Lease Agreement ("Lease") will be assigned. "Vehicle" means the leased vehicle described below, including all equipment, parts, accessories and accessions. You agree to lease the Vehicle from us according to the terms and conditions of this Lease. The consumer lease disclosures contained in this Lease are also made on behalf of Assignee.

## 2. VEHICLE DESCRIPTIONS
### A. LEASED VEHICLE

| | Year | Make | Model | Body Style | Odometer Reading | Vehicle Identification Number |
|---|---|---|---|---|---|---|
| [X] New [ ] Used | 2018 | DODGE | CHARGER | 4DR SDN R/T RWD | 4015 | 2C3CDXCT7JH284938 |

**Primary Use of Vehicle:** [ ] Personal, family or household purposes  [X] Business, commercial or agricultural purposes

You acknowledge that you have received and examined the Vehicle described above, that the Vehicle is equipped as described and is in good operating order and condition. You accept the Vehicle for all purposes of this Lease.

### B. TRADE-IN VEHICLE: Year 2016  Make RAM  Model 1500

| 3. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized below) | 4. MONTHLY PAYMENTS | 5. OTHER CHARGES (Not part of your Monthly Payment) | 6. TOTAL OF PAYMENTS (The amount you will have paid by the end of the Lease) |
|---|---|---|---|
| | A. Your first Monthly Payment of $586.76 is due on the Lease Date, followed by 47 payments of $586.76 due on the 20th of each month. | A. Termination Fee (if you do not purchase the Vehicle) $395.00 | |
| $11379.00 | B. The total of your Monthly Payments is $28164.48 | B. Total $395.00 | $39351.72 (Sections 3 plus 4(B) plus 5(B) minus Sections 7(A)(3) minus 7(A)(4)) |

## 7. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery:**
(1) Capitalized Cost Reduction  $10422.24
(2) Sales/Use Tax on Capitalized Cost Reduction  83.00
(3) First Monthly Payment  586.76
(4) Refundable Security Deposit  N/A
(5) Initial Title, Registration and License Fees  146.55
(6) Upfront Sales/Use Tax on Vehicle  N/A
(7) DOC FEE  140.45
(8) Total  $11379.00

**B. How the Amount Due at Lease Signing or Delivery will be Paid:**
(1) Net Trade-in Allowance  $N/A
(2) Rebates and Noncash Credits  9500.00
(3) Amount to be Paid in Cash  1879.00
(4) Total  $11379.00

## 8. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:

A. **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($40785.00) and any items you pay over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) ..... $45501.68
B. **Capitalized Cost Reduction.** The amount of any Net Trade-in Allowance, rebate, noncash credit, or cash you pay that reduces the Gross Capitalized Cost ..... − 10422.24
C. **Adjusted Capitalized Cost.** The amount used in calculating your Base Monthly Payment ..... = 35079.44
D. **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your Base Monthly Payment ..... − 16264.56
E. **Depreciation and any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term ..... = 18814.88
F. **Rent Charge.** The amount charged in addition to the Depreciation and any Amortized Amounts ..... + 7024.00
G. **Total of Base Monthly Payments.** The Depreciation and any Amortized Amounts plus the Rent Charge ..... = 25838.88
H. **Lease Payments.** The number of payments in your Lease (Lease Term 48 months) ..... ÷ 48
I. **Base Monthly Payment** ..... = 538.31
J. **Monthly Sales/Use Tax** ..... + 48.45
K. N/A ..... + N/A
L. **Total Monthly Payment ("Monthly Payment")** ..... = $586.76

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be.

## 9. EXCESSIVE WEAR AND USE
You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 10000 miles per year at the rate of $.25 per mile. No rebate or credit will be paid to you if the mileage is less than the specified amounts.

## 10. PURCHASE OPTION AT END OF LEASE TERM
If you have fully performed all of your obligations under this Lease, including paying all of your Monthly Payments and all other amounts due under this Lease, then you (the Lessee or Co-Lessee only) have an option to purchase the Vehicle AS IS at the end of the Lease Term for $16614.56, plus any taxes, official fees and other charges related to such purchase. *Includes a purchase option fee of not more than $350.

**Other Important Terms.** See both sides of this Lease for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

**PA Notice:** If you do not meet your contract obligations, you may lose the Vehicle and the right to use it under this Lease.

## 11. ITEMIZATION OF GROSS CAPITALIZED COST

A. Agreed Upon Value of Vehicle  $40785.00
B. Sales/Use Tax  N/A
C. Initial title, Registration and License Fees  N/A
D. Outstanding Prior Credit or Lease Balance  4021.68
E. Lease Acquisition Fee  695.00
F. Credit Life and/or Disability Insurance  N/A
G. Mechanical Breakdown Protection  N/A
H. Maintenance or Service Contract  N/A
I. Extended Warranty Contract  N/A
J. Dealer Documentation Fee  N/A
K. Other (Describe) N/A  N/A
L. Other (Describe) N/A  N/A
M. Total = Gross Capitalized Cost  $45501.68

## 12. ESTIMATED OFFICIAL FEES AND TAXES
The total estimated amount you will pay for official and license fees, registration, title and taxes over the term of your Lease, whether included with your Monthly Payments or assessed otherwise is: $2681.15. This is an estimate based on current tax rates, the actual total of fees and taxes may be higher or lower, depending on the tax rate in effect or the value of the Vehicle at the time a fee or tax is assessed.

## 13. WARRANTIES AND OPTIONAL PRODUCTS
If the Vehicle is new, it is covered by the standard manufacturer's new vehicle warranty. If the Vehicle is new or used, it is not covered by any other express warranty unless identified below:
[ ] The Vehicle is covered by the remainder of the standard manufacturer's new vehicle warranty.
[ ] The Vehicle is covered by an extended warranty purchased from the manufacturer or other third party provider.
[X] N/A

We assign to you all rights we have under any of these warranties. You acknowledge that you have received a copy of the indicated warranties.
EXCEPT AS PROVIDED ABOVE, WE MAKE NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED AS TO THE VEHICLE OR ANY PART OR ACCESSORY THEREOF. WE MAKE NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER. If this Lease is signed in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new), or West Virginia, we do not exclude any implied warranty of merchantability or fitness for any particular purpose.

You are not required to buy any of the optional insurance or other products listed below to enter into this Lease and your failure to do so will not be a factor in the approval of this extension of credit. These insurance and other products will not be provided unless you sign below and are accepted by the Provider. If you sign below, you have received a notice of the terms of the insurance or product, you want to obtain the insurance or product, and you agree to pay the premium or charge shown.

**[ ] Credit Insurance**
  [ ] Credit Life
    Initial Coverage: $ N/A    [ ] Single Cost: $ N/A    Provider N/A    Cost $ N/A    mo./mileage
                        [ ] Joint Cost: $ N/A    X N/A Lessee Signature    X N/A Co-Lessee Signature
  [ ] Credit Disability
    Maximum Monthly Coverage: $ N/A (single only) Cost: $ N/A

**[ ] Mechanical Breakdown Protection Contract**
  Provider N/A    Cost $ N/A    mo./mileage
  X N/A Lessee Signature    X N/A Co-Lessee Signature

**[ ] Maintenance or Service Contract**
  Provider N/A    Cost $ N/A    mo./mileage
  X N/A Lessee Signature    X N/A Co-Lessee Signature

X N/A Primary Lessee Signature    N/A Date
X N/A Co-Lessee Signature    N/A Date

**[ ] Extended Warranty Contract (non-insurance product)**
  Provider N/A    Cost $ N/A    mo./mileage
  X N/A Lessee Signature    X N/A Co-Lessee Signature

## 14. INSURANCE VERIFICATION
The Vehicle is insured by:

| Policy Number | Insurance Company | Insurance Agent | Agent Address | Agent Phone Number |
|---|---|---|---|---|
| Redacted | STATE FARM | STATE FARM | ONE STATE FARM DR, CONCORDVILLE PA 19339 | Redacted |

You authorize us to verify and give your agent authorization to place the minimum coverage required by this Lease (see Section 17).
**NOTICE TO FLORIDA LESSEES:** The valid and collectible liability insurance and personal injury protection insurance of any authorized rental or leasing driver is primary for the limits of liability and personal injury protection coverage required by sections 324.021(7) and 627.736, Florida Statutes.

## 15. SIGNATURES
YOU AGREE TO ALL THE PROVISIONS ON BOTH SIDES OF THIS LEASE AND REPRESENT THAT YOU HAVE READ BOTH SIDES OF THIS LEASE.

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**NOTICE TO LESSEE AND CO-LESSEE:** (1) DO NOT SIGN THIS LEASE BEFORE YOU READ IT. (2) YOU ARE ENTITLED TO A COPY OF THIS LEASE. Or SD Notice: If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.
**YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS LEASE.**

### INDIVIDUAL LESSEE SIGNATURE(S)
Lessee Signature: X /s/    Co-Lessee Signature: X /s/ Beth A Signorini

### BUSINESS LESSEE SIGNATURE
Authorized Signer's Name: N/A    Title: N/A    Signature: X N/A

### LESSOR SIGNATURE
The authorized signature of the Lessor below has the effect of: (1) accepting the terms and conditions of this Lease; (2) acknowledging verification of the Lessee's insurance coverage (see Section 14); and (3) assigning to USB Leasing LT or its successors and assigns all right, title and interest in, and to the Vehicle and this Lease according to the terms and conditions of the Dealer Lease Agreement between Lessor and Assignee.

Authorized Signature: X /s/ T. Presto    BUS MGR

*[This space intentionally left blank. See additional terms on page 2.]*

**16. LATE CHARGE; RETURNED INSTRUMENT CHARGE; INQUIRIES.**
If all or any portion of a Monthly Payment or any other amount due under this Lease is not received within 10 days after it is due, you will pay a late charge of $25. If the Lessor, as indicated in the Lessor's address on Side1, is located in the state of Iowa a late charge will not be assessed. If the Lessor, as indicated in the Lessor's address on Side 1, is located in the state of Colorado, you will pay a late charge of 5% of the amount due if payment is late, whichever is less. If the Lessor, as indicated in the Lessor's address on Side 1, is located in the state of Kansas, you will pay a late charge of 5% of the amount which is past due or $25, whichever is less. If the Lessor, as indicated in the Lessor's address on Side 1, is located in the state of Kentucky, you will pay a late charge of $20. If the Lessor, as indicated in the Lessor's address on Side 1, is located in the state of Maine, you will pay a late charge of 5% of the amount which is past due or $10, whichever is less, and this late charge will only be due if we do not receive your Monthly Payment within 15 days of its due date.
If any check, draft or order or other similar instrument is returned to us unpaid for any reason, including, but not limited to, non-sufficient funds, you will pay a returned instrument charge of $20, to the extent not prohibited by applicable law. However, if the Lessor, as indicated in the Lessor's address on Side 1, is located in the state of Louisiana, West Virginia, or Wyoming, the returned instrument charge will be $15.

**17. INSURANCE**
Unless otherwise agreed, you must provide insurance coverage in the amount and types indicated below at your expense during the Lease Term and until the Vehicle is returned to us:
  A. Fire, theft and comprehensive insurance with a maximum deductible of $500;
  B. Collision insurance with a maximum deductible of $500;
  C. Liability insurance for bodily injury or death to any one person in the amount of $100,000 and for any one accident in the amount of $300,000 or combined single limit coverage of $300,000;
  D. Property damage insurance for $50,000; and
  E. Uninsured and underinsured motorist coverage and any other insurance required by the state where the Vehicle is registered.
The insurance policy must name us as loss payee and an additional insured. The policy also must require the insurance company to notify us 10 days before any cancellation or changes in insurance coverage. You will notify us and your insurance company within 24 hours after any damage, loss, theft, seizure or impoundment of the Vehicle. You assign to us any amounts payable under such insurance policies. You agree that we may endorse your name upon any check, draft, order or other similar instrument representing payment to you of such amounts.
The Insurance listed above is required in connection with this Lease. You have the option of providing the required insurance through an existing policy of insurance owned or controlled by you or through a policy paid for by you and obtained from any insurance company authorized to transact business in the state in which this Lease was signed. We may for reasonable cause decline the insurance provided by you.
**PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS LEASE.**

**18. VEHICLE OPERATION**
  A. VEHICLE MAINTENANCE AND OPERATING COSTS. You agree to maintain the Vehicle in good working order and operating condition and have all necessary repairs made. You are responsible for all costs of maintaining and servicing the Vehicle. You agree to have the Vehicle serviced and repaired according to the manufacturer's recommendations and to ensure that the warranty, if any, remains valid. You will keep all maintenance and repair records. You agree to comply with all manufacturer recall notices. You agree to pay for all operating costs including, but not limited to, gas, oil, antifreeze, traffic and parking tickets or violations, towing and replacement tires.
  B. VEHICLE USE. You will: (1) allow the Vehicle to be operated only by licensed and insured drivers; (2) not use the Vehicle for any improper or illegal purpose, or to commit any illegal act; (3) not use the Vehicle to transport passengers or goods for hire, including but not limited to use as taxi cab, limousine, ride service, for livery, as a municipal vehicle, ambulance, hearse, or in driver education; (4) not use the Vehicle in any way that causes the cancellation or suspension of any applicable insurance or manufacturer's warranty; (5) not use the Vehicle in towing, snow plowing, construction, or for hauling; (6) not remove the Vehicle from the state where you reside for more than 30 consecutive days without our prior written approval (for purposes of this Section 18(B)(6), the state where you reside is the state where the Vehicle was originally titled on the Lease Date or, if applicable, the most recent state where we permitted you to title the Vehicle); (7) not remove the Vehicle from the contiguous United States for any period of time; (8) not change or modify the Vehicle in any way without our prior written approval, except for normal maintenance; and (9) deliver the Vehicle to such location that we require for our inspection at any time during the Lease Term. You will not assign or sublease any interest in the Vehicle or the Lease without our written consent.
  C. TAXES, REGISTRATION AND TITLING. You agree to pay all title, registration, license, inspection, license and other fees, taxes and charges imposed by government authorities in connection with the Vehicle, this Lease or any amounts due or payable arising from this Lease. If such amounts are assessed for a period during the Lease Term, you will pay them in full even though you may return the Vehicle before the end of the Lease Term.
You agree to title, register and license the Vehicle in the state in which it is garaged. You must request any power of attorney required from us to title, register or license the Vehicle. You agree to pay a $25 title transfer fee each time the Vehicle is retitled.
**If the Vehicle is registered in a jurisdiction which assesses personal property taxes, you agree to pay the personal property tax.**
  D. RELEASE OF INFORMATION. You agree that we may provide information about you to government authorities upon their request for the purpose of enforcing any taxes, fees, charges, penalties, etc. related to your use or ownership of the Vehicle.

**19. PURCHASE OPTION**
  A. END OF LEASE TERM. At scheduled Lease termination, you have an option to purchase the Vehicle AS IS as set forth in Section 10 of this Lease.
  B. PRIOR TO END OF LEASE TERM. At any time prior to scheduled Lease termination, you have an option to purchase the Vehicle AS IS. The Purchase Option Price will be a sum equal to: (1) the amount set forth in Section 10; plus (2) the Early Termination Liability set forth in Section 23(C) and (D); less applicable credits for the items set forth in Sections 29(C)(1), (C)(2) and (C)(3).
  C. TRUE LEASE. This is a true lease and you will not own or have any equity in the Vehicle or its replacement parts unless you exercise the option to purchase the Vehicle.

**20. EXCESS WEAR AND USE**
We have based the Monthly Payment on the assumption that you will not subject the Vehicle to excess wear and use. You agree not to expose the Vehicle at the scheduled end of the Lease Term. You agree to pay us the amount that it would cost to make all repairs to the Vehicle that are not the result of normal wear whether or not we, in our sole discretion, actually make the repairs. Any excess wear and use assessed at scheduled termination of this Lease will be based upon an estimate of the repair cost unless we actually make the repairs.
Excess wear and use includes, but is not limited to, the amount it would cost to repair: (1) inoperative mechanical parts, including power accessories; (2) mismatched paint or any special identification mark; (4) cracked, scratched, pitted or chipped windows, broken or discolored windows or inoperative window mechanisms; (5) broken headlight lenses or sealed beams; (6) scratches more than two inches long through the chrome on bumpers or bumper dents; (7) broken grilles or dents in the grilles; (8) single dents or a series of dents on other trim parts, including headlight and tail light bezels; (9) electronic malfunctions; (10) seats, seat belts, headlining, dashboards, door panels or carpeting which is torn or damaged beyond ordinary wear and tear or is burned; (11) major fluid leaks; (12) damaged exhaust systems; (13) damage from flood, water, hail or sand; (14) damage which makes the Vehicle either unsafe or unlawful to operate; (15) all damage which would be covered by the required comprehensive, collision and upset insurance whether or not such insurance actually is in force; and (16) the Vehicle to restore any original equipment or accessories which were removed or altered during the Lease Term.
Excess wear and use also includes, but is not limited to, the amount it would cost to replace: (i) any tire not part of a matching set of five tires (or four with emergency "doughnut" spare if initially so equipped); (ii) any tires with less than 1/8 inch of tread remaining at the shallowest point; (iii) any tire with gouged, cut, torn or plugged sidewalls; (iv) any missing or dented parts, accessories and adornments, including bumpers, jacks, ornamentation, aerials, hubcaps, chrome stripping, rear view mirrors, radio and stereo components or spare tire; or (v) any parts which are not original manufacturer equipment or of equal quality and design.
**Only an inspection company designated by us is authorized to conduct an inspection to determine excess wear and use.**

**21. VEHICLE RETURN**
If you do not exercise your Purchase Option, you must return the Vehicle to us at the time and place we specify. If you fail to return the Vehicle, you must continue to make your Monthly Payment to us on a month-to-month basis as approved by us, but in no circumstance can the Lease Term continue for more than 6 months beyond the scheduled Lease termination date.

**22. SCHEDULED TERMINATION**
Except for Early Termination, this Lease will terminate and end upon:
  A. The end of the Lease Term;
  B. Return of the Vehicle;
  C. Completion of a signed odometer statement; and
  D. Payment of the following amounts:
   (1) The Termination Fee;
   (2) Any amounts owed for Excess Wear;
   (3) Any amounts owed for Excess Mileage;
   (4) All amounts due and unpaid under this Lease; and
   (5) Any official fees and taxes due in connection with Lease termination.

**23. EARLY TERMINATION**
  A. LESSEE'S RIGHT TO TERMINATE EARLY. You may terminate this Lease before the end of the Lease Term if you are not in Default. If you do not exercise your purchase option, the charge for such Early Termination is the Early Termination Liability defined below. You must send us written notice of your early termination by registered mail 30 days before the date of termination.
  B. LESSOR'S RIGHT TO TERMINATE EARLY. We may terminate this Lease before the end of the Lease Term if you are in Default. If you do not exercise your purchase option, upon such termination we shall be entitled to the Early Termination Liability defined below.
  C. EARLY TERMINATION LIABILITY. The Early Termination Liability is calculated as follows:
   (1) The Termination Fee; plus
   (2) An Early Termination Administrative Charge equal to the number of Base Monthly Payments shown in the chart below which is based upon the percentage of months in the Lease Term which have expired:

| % of Months in Lease Term Expired | Number of Base Monthly Payments Due |
|---|---|
| 0-25% | 2.5 |
| 26-50% | 2.0 |
| 51-75% | 1.5 |
| 76-99% | 1.0 |

   (3) Plus all unpaid amounts that are due or past due under this Lease;
   (4) Any official fees, taxes and other charges related to early termination; plus
   (5) All expenses related to recovering, obtaining, storing, preparing for sale and selling the Vehicle, including reasonable attorneys' fees to the extent not prohibited by law; plus
   (6) The Lease Balance; plus
   (7) The Residual Value of the Vehicle; minus
   (8) The Realized Value of the Vehicle.
  D. LEASE BALANCE. The Lease Balance is equal to:
   (1) The Base Monthly Payment times the number of Monthly Payments not yet due; minus
   (2) Unearned Rent Charges included in the Base Monthly Payments not yet due calculated according to the Actuarial Method.
The term "Actuarial Method" means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost.
  E. REALIZED VALUE. The Realized Value will be determined in one of the following ways:
   (1) By a written agreement between you and us;
   (2) Within 10 days of early termination, you may obtain, at your own expense, from an independent third party agreeable to both you

(3) If us, a professional appraisal of the wholesale value of the Vehicle which could be realized at sale. The appraised value shall then be used as the Realized Value.
(4) We will determine the Realized Value in accordance with accepted practices in the automobile industry for determining the wholesale value of used vehicles by obtaining a wholesale auto bid for the purchase of the Vehicle or by disposing of the Vehicle in an otherwise commercially reasonable manner.
  (4) If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, the Realized Value will equal the amount of any proceeds we receive from your required insurance. If there are no insurance proceeds, the Realized Value will be zero.
  F. If you terminate this Lease early pursuant to the federal Servicemembers Civil Relief Act or any equivalent provisions under state law, you may be charged for excess mileage if the actual mileage of the Vehicle at Lease termination is more than the allowed miles for the time period that you actually leased the Vehicle. In this case, we will calculate the total allowed miles by pro-rating the annual allowed miles set out in Section 9 to the month. If you terminate this Lease early for any other reason and your Early Termination Liability includes payment to us of the remaining Base Monthly Payments, you may be charged for excess mileage only if the actual mileage of the Vehicle at Lease termination is more than the total allowed mileage for the entire Lease Term.

**24. DEFAULT**
  A. DEFAULT. The following are events of default ("Default") to the extent permitted by state law if this Lease is governed by the laws of a state other than Iowa:
   (1) You fail to make any payment in full when due;
   (2) You fail to keep any promise in this Lease or any agreement made in connection with this Lease;
   (3) You fail to maintain insurance on the Vehicle as required by this Lease;
   (4) You fail to return the Vehicle to us at the time and place we specify;
   (5) You die, are declared incompetent, become insolvent, a bankruptcy petition is filed by or against you or you dissolve or cease active business affairs;
   (6) You make any material misrepresentation on your credit application;
   (7) The Vehicle is subject to actual or threatened seizure, confiscation or levy by governmental or legal process;
   (8) Your driver's license expires or is suspended, revoked, cancelled or is otherwise restricted;
   (9) The Vehicle is subject to a total loss due to collision, destruction, or unknown theft; or
   (10) Anything else happens that adversely affects our interest in the Vehicle or your ability to comply with your obligations under this Lease.
  If this Lease is governed by the laws of Iowa, the following are events of default ("Default"):
   (1) You fail to make a payment within 10 days of the time required by this Lease;
   (2) You fail to observe any other covenant or obligation under this Lease, if the breach materially impairs the condition, value, or protection of the Vehicle, our rights in the Vehicle, or your prospect of paying amounts due under the Lease.
  B. REMEDIES. If you are in Default, we may take any or more of the following actions:
   (1) Terminate this Lease and your rights to use the Vehicle.
   (2) Take possession of the Vehicle without prior demand, unless otherwise required by law. If the Vehicle is equipped with an electronic tracking device, you understand and agree that we may use the device to find the Vehicle and any personal property in it so we can take possession. We may take any personal property that is in or on the Vehicle when we take it. We will hold the personal property for you for ten (10) days, but we will neither be responsible for safekeeping such property nor are we required to notify you about it. If you do not pick up the property within that time, we may dispose of it any way we determine.
   (3) Recover all expenses related to enforcing this Lease and obtaining, storing and selling the Vehicle, including, without limitation, reasonable attorneys' fees and court costs, to the extent not prohibited by law.
   (4) Take any reasonable action to correct the default or to prevent our loss. You agree to reimburse us for any amounts we pay to correct or cover your Default.
   (5) Require you to return the Vehicle and any related records or make them available to us in a reasonable manner.
   (6) Make a claim for any and all insurance, warranty, mechanical breakdown protection or maintenance contract benefits or refunds that may be available on your Default or on the termination of the Lease and apply any amount received to the amount you owe.
   (7) Assess interest on all outstanding amounts owing to us under this Lease, including without limitation, amounts owing for excess wear and use and for excess mileage, at the highest rate permitted by applicable law until such amounts are paid in full.
   (8) Use any remedy we have at law or in equity.
  C. ADDITIONAL DEFAULT REMEDIES (LOUISIANA ONLY): If the Vehicle is located in and/or titled in the State of Louisiana, this section applies.
  If you fail to make two consecutive monthly payments, or fail to make a payment for 60 days if your scheduled payments are more frequent than monthly, we may have additional remedies as provided in the Louisiana ADDITIONAL DEFAULT REMEDIES ACT.

**25. ATTORNEYS' FEES**
If this Lease is governed by the Iowa Consumer Credit Code you will not be required to pay our attorneys' fees.
If this Lease is governed by the Maine Consumer Credit Code you will not be required to pay our attorneys' fees or court costs. If this Lease is governed by the laws of Ohio or West Virginia, you will not be required to pay our attorneys' fees. If this Lease is governed by the laws of Colorado, Oklahoma, or South Carolina, any attorneys' fees you are required to pay will not exceed 15% of the unpaid debt after default and referral to an attorney who is not our salaried employee, unless otherwise directed by a court. If this Lease is governed by the laws of Kansas, the costs of collection you are required to pay will not: (i) include costs incurred by our salaried employees; (ii) provide for our recovery of both attorneys' fees and collection agency fees; or (iii) exceed 15% of the unpaid debt after default. If this Lease is governed by the laws of Louisiana, any attorneys' fees you are required to pay will not exceed 25% of the total amount payable under this Lease. If this Lease is governed by the laws of Indiana or Wyoming, any attorneys' fees you are required to pay will be limited to fees for an attorney who is not our salaried employee.

**26. REIMBURSEMENT**
You will reimburse us for and hold us harmless from any loss or damage to the Vehicle and its contents and from all claims, losses and injuries, expenses and costs related to the use, the maintenance or condition of the Vehicle or its driver. If you fail to pay, you will reimburse us and pay a $25 administration fee, where permitted by law, for any fine, ticket, penalty or other amount that is paid on your behalf.

**27. WAIVER OF GAP AMOUNT; TOTAL LOSS OF VEHICLE.**
If the Vehicle is subject to a total loss due to collision, destruction or unknown theft as determined by us, you will pay to us the Gap Amount, which is the difference between the Early Termination Liability calculated under Section 23(C) and the insurance proceeds received by us on account of the total loss of the Vehicle. However, if you had insured the Vehicle against such total loss at the time of the total loss, we will waive the Gap Amount and you will pay to us the sum of: (A) all Monthly Payments overdue and any other amounts that are due or past due at the time of the loss; plus (B) the amount of your insurance deductible and any other amounts that were subtracted from the Vehicle's actual cash value to determine the insurance proceeds we received for the total loss; plus (C), any applicable charges for warranties, mechanical breakdown protection or maintenance contracts purchased in connection with this Lease. Even if the Vehicle is insured, you must continue to pay your scheduled Monthly Payments until we receive your full insurance proceeds.

**28. REFUNDABLE SECURITY DEPOSIT**
Your Refundable Security Deposit may be used by us to pay all amounts that you fail to pay under this Lease. Upon termination of this Lease and our determination that no additional amounts may be due after Lease termination (such as personal property taxes not yet billed), we will refund to you any portion of the Refundable Security Deposit not applied to amounts you owe and fail to pay under this Lease. Your Refundable Security Deposit cannot be used as a Monthly Payment. You will not earn interest on your Refundable Security Deposit. Any interest or monetary benefit to us which may accrue as a result of our retention of the Refundable Security Deposit will be paid to you nor applied to reduce your obligations under this Lease.

**29. LESSEE'S RIGHT TO CANCEL**
If we are unable to assign this Lease to a financial institution within 10 business days, we have the right to cancel the Lease. You will be required to return the Vehicle to us. If the Vehicle has experienced more than normal wear and tear, you will be responsible for all costs we incur to restore the Vehicle to the same condition in which you received it. We will return to you all amounts received from you at Lease closing less the amount required to restore the Vehicle's condition.

**30. GENERAL**
  A. SECURITY INTEREST. You grant us a security interest, to the extent permitted by state law, in the property listed below to secure performance of your obligations under this Lease: (1) in loss proceeds of any Vehicle insurance; (2) in the proceeds of any credit life or disability insurance, mechanical breakdown protection contract or maintenance contract purchased with this Lease; and (3) any unearned premiums or refunds of any of the foregoing.
  B. ODOMETER STATEMENT/OTHER DOCUMENTS. Federal Law requires that you disclose the Vehicle's odometer reading to us upon termination of this Lease or transfer of ownership. Failure to complete an odometer disclosure statement, failure to return it to us or making a false statement therein may result in fines and/or imprisonment. You also agree to execute any and all documents and/or provide us with any information that we may reasonably request from you in connection with the termination of this Lease or otherwise.
  C. OWNERSHIP. This agreement is a lease only. We are the owner of the Vehicle. You have no rights of ownership or title to the Vehicle unless you exercise your purchase option. You will not allow any lien or encumbrance to attach to the Vehicle.
  D. RIGHT OF SET-OFF. We may apply any money in any deposit account you have with us and on which your name appears as owner or co-owner, or any credit balance in your lease account to the payment of amounts you owe to us including lease termination charges as detailed in this Lease.
  E. ENFORCEABILITY. This Lease will be governed and enforced by the laws of the state in which the Lessor is located, as indicated in the Lessor's address on Side 1. Each Lessee is responsible, individually and together, under this Lease. This is known as "joint and several" responsibility. If any provision of this Lease is found unenforceable by any court, the remaining provisions of the Lease will remain in full force and effect.
  F. WARRANTY OF AMOUNT OWED. You promise that the amount owed on the outstanding balance of any financing agreement on any trade-in vehicle is accurate. If the amount owed is more than the amount represented to the Lessor by you, you will pay Lessor the excess amount.
  G. EXPRESS CONSENT TO CONTACT YOU. By providing us with a telephone number for a cellular phone or other wireless device, you are expressly consenting to receiving communications at that number – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from U.S. Bank and its affiliates and agents. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.
  H. TOLL VIOLATION NOTICE (COLORADO ONLY). Pursuant to the requirements of C.R.S.A. § 43-3-302 and § 43-4-808, you are liable for payment of a toll evasion violation civil penalty incurred on or after the date you take possession of the Vehicle. Your name, address, and state driver's license number shall be furnished to the toll road or toll highway company where a toll evasion violation civil penalty is incurred during the term of the Lease.
  I. ENTIRE AGREEMENT. Important: Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this Lease may be legally enforced. The terms of this Lease may only be changed by a written agreement signed by you and us. This Lease is a final expression of the credit agreement between you and us. This Lease may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement between you and us.

**31. ARBITRATION.** This section does not apply to any dispute in which the amount in controversy is within the jurisdiction limits of, and is filed in, a small claims court, and you and we retain rights to self-help remedies, such as repossession. (The following arbitration provision does not apply to leases originated in Washington, D.C.) You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules specified in this provision. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire arbitration provision carefully before accepting the terms of this agreement.
Any claim, dispute or controversy (whether in contract, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Consumer Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that would be enforceable on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by contacting the AAA at 800-778-7879 or www.adr.org/Rules. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $200 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. This arbitration provision shall survive repayment of your extension of credit and termination of your account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

© 2001 USB Leasing LT Form 30032, 01/18

Top Copy - LESSOR COPY   2nd Copy - LESSEE COPY   3rd Copy - FILE COPY   4th Copy - DEALER COPY   (Side 2)

Case 18-21899-GMB    Doc 112    Filed 02/28/20    Entered 02/28/20 11:40:53    Desc Main
Document    Page 4 of 6

**EXHIBIT B**

# COMMONWEALTH OF PENNSYLVANIA
## CERTIFICATE OF TITLE FOR A VEHICLE

FUEL TYPE: GASOLINE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | TITLE NUMBER |
|---|---|---|---|
| 2C3CDXCT7JH284938 | 2018 | DODGE | Redacted |

| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM. PROCD. DATE | ODOM. MILES | ODOM. STATUS |
|---|---|---|---|---|---|---|
| SDN | 0 | | | 11/27/18 | 004015 | 0 |

| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |
|---|---|---|---|---|---|
| 11/27/18 | 11/27/18 | | | | |

LESSEE AUGUST C SIGNORINI JR &BETH ANN

**ODOMETER STATUS**
- 0 = ACTUAL MILEAGE
- 1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
- 2 = NOT THE ACTUAL MILEAGE
- 3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
- 4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
- A = ANTIQUE VEHICLE
- C = CLASSIC VEHICLE
- D = COLLECTIBLE VEHICLE
- F = OUT OF COUNTRY
- G = ORIGINALLY MFGD. FOR NON-U.S. DISTRIBUTION
- H = AGRICULTURAL VEHICLE
- L = LOGGING VEHICLE
- P = IS/WAS A POLICE VEHICLE
- R = RECONSTRUCTED
- S = STREET ROD
- T = RECOVERED THEFT VEHICLE
- V = VEHICLE CONTAINS REISSUED VIN
- W = FLOOD VEHICLE
- X = IS/WAS A TAXI

REGISTERED OWNER(S)

USB LEASING LT
1850 OSBORN AVE
OSHKOSH WI 54902

FIRST LIEN FAVOR OF:

SECOND LIEN FAVOR OF:

FIRST LIEN RELEASED _____ DATE _____
BY _____ AUTHORIZED REPRESENTATIVE

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

SECOND LIEN RELEASED _____ DATE _____
BY _____ AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

USB LEASING LT
1850 OSBORN AVE
OSHKOSH WI 54902

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

LESLIE S. RICHARDS
Secretary of Transportation

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

SUBSCRIBED AND SWORN TO BEFORE ME:
MO. DAY YEAR

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

SIGNATURE OF PERSON ADMINISTERING OATH

IF NO LIEN, CHECK ☐   IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY    STATE    ZIP

The undersigned hereby makes application for Certificate of Title to the vehicle described above, subject to the encumbrances and other legal claims set forth here.

IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO ☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

2ND LIENHOLDER NAME

SIGNATURE OF APPLICANT OR AUTHORIZED SIGNER

STREET

SIGNATURE OF CO-APPLICANT/TITLE OF AUTHORIZED SIGNER

CITY    STATE    ZIP

STORE IN A SAFE PLACE - IF LOST APPLY FOR A DUPLICATE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**J.D. POWER**

12/2/2022

J.D. POWER Used Cars/Trucks

EXHIBIT C

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2018 Dodge Charger Sedan 4D Daytona 5.7L V8 |
| Region: | Eastern |
| Period: | December 2, 2022 |
| VIN: | 2C3CDXCT7JH284938 |
| Mileage: | 67,500 |
| Base MSRP: | $38,995 |
| Typically Equipped MSRP: | $40,390 |
| Weight: | 4,264 |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly** | | | | |
| **Trade-In** | | | | |
| Rough | $23,850 | N/A | $350 | **$24,200** |
| Average | $25,600 | N/A | $350 | **$25,950** |
| Clean | $27,025 | N/A | $350 | **$27,375** |
| Clean Loan | $24,325 | N/A | $350 | **$24,675** |
| Clean Retail | $29,925 | N/A | $400 | **$30,325** |
| **Weekly** | | | | |
| **Auction** | | | | |
| Low | $20,250 | $57 | N/A | **$20,307** |
| Average | $24,700 | $57 | N/A | **$24,757** |
| High | $29,175 | $57 | N/A | **$29,232** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Rear Parking Sensors | w/body | w/body |
| Aluminum/Alloy Wheels | w/body | w/body |
| Heated Exterior Mirrors | w/body | w/body |
| Leather Seats | w/body | w/body |
| Power Passenger Seat | w/body | w/body |
| Power Sunroof [VIN Precision+] | $350 | $400 |

**J.D. POWER**

12/2/2022

## J.D. POWER Used Cars/Trucks

|  | Trade-In/Loan | Retail |
|---|---|---|
| Cooled Front Seats | w/body | w/body |
| Driver's Seat Memory | w/body | w/body |
| Heated Front Seats | w/body | w/body |
| Heated Rear Seats | w/body | w/body |

J.D. Power Used CarGuide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report. ©2021 J.D.Power